# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| JERRI JONES, | § § § | |
| Plaintiff, | § § § | CIVIL ACTION NO.  6:18-CV-00031-RWS |
| v. | § § § | |
| ARTISTS RIGHTS ENFORCEMENT CORPORATION, | § § § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Artists Rights Enforcement Corporation's Motion to Dismiss.  Docket No. 3.  Plaintiff Jerri Jones filed a Response.  Docket No. 7.  Defendant filed a Reply (Docket No. 8), and Plaintiff filed a Sur-Reply (Docket No. 9).  Based on the briefing, Defendant's Motion is **GRANTED**.

## BACKGROUND

This case involves a famed musical group known as "The Dixie Cups."  Originally formed in the 1960s, the Dixie Cups consisted of a trio of singers who first sang together in grade school: sisters Barbara Ann and Rosa Lee Hawkins, plus their cousin Joan Marie Johnson ("Ms. Johnson").

On January 4, 1984, Defendant Artists Rights Enforcement Corporation ("AREC"), a New York corporation, and Ms. Johnson, a resident of Louisiana, entered into a contract (the "contract") in which Ms. Johnson engaged AREC to collect all music royalties due to her as a member of the Dixie Cups. In return, she agreed to pay AREC 50 percent of all royalties that it collected on Ms. Johnson's behalf.  *See* Docket No. 2 at 6–7.

Ms. Johnson passed away in October 2016 and her will was probated in Louisiana. Docket No. 2 at 3. In her will, Ms. Johnson bequeathed her music royalties to her niece and goddaughter, Plaintiff Jerri Jones ("Jones"). However, a dispute soon arose between Jones and AREC, as AREC continued to retain 50 percent of all royalty payments after Ms. Johnson's death. AREC filed a lawsuit against Jones in New York, but the Court dismissed it for lack of jurisdiction over Jones. *See* Docket No. 9-4. AREC next filed a similar lawsuit in California, but that court also dismissed it for lack of jurisdiction over Jones. *See* Docket No. 9-5; *Artists Rights Enforcement Corp. v. Jones*, No. BC669742 (Cal. Sup. Ct. Jan. 5, 2018).

Jones filed this action in Texas state court, seeking a declaratory judgment that Jones is not bound by the Contract and that AREC is not entitled to 50 percent of Jones's royalties. Docket No. 2 at 4. Jones also seeks money damages for the amount AREC has already taken from Jones. *Id*. On January 26, 2018, AREC removed this case to federal court. Docket No. 1. AREC then filed the present Motion to Dismiss for Lack of Jurisdiction. Docket No. 3.

## LEGAL STANDARD

Absent a controlling federal statute, a plaintiff may establish personal jurisdiction under Texas's long-arm statute when that exercise of personal jurisdiction comports with due process. *Gundle Lining Const. Corp. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996).

The Texas long-arm statute authorizes the exercise of jurisdiction over non-residents "doing business" in Texas. *Id*. (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West)). The Texas Supreme Court has interpreted the "doing business" requirement broadly, allowing the long-arm statute to reach as far as the federal Constitution permits. *Id.* (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). Thus, the two-step inquiry is actually a federal due process analysis. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

A court's exercise of personal jurisdiction over a non-resident defendant comports with constitutional due process requirements when: (1) the defendant "purposefully availed" itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of personal jurisdiction does not offend traditional notions of "fair play and substantial justice." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Both prongs must be satisfied in order for a court to exercise personal jurisdiction over a defendant. *Id.*

The "minimum contacts" prong is further subdivided into contacts that confer "specific jurisdiction" and those that confer "general jurisdiction." General jurisdiction exists when a nonresident defendant's contacts with the forum state are "substantial, continuous, and systematic." *Johnston*, 532 F.3d at 609 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-19 (1984)). The defendant's contacts with the forum state are evaluated "over a reasonable number of years" up to the date the lawsuit was filed and are to be reviewed in total rather than in isolation from one another. *Id.* at 610.

When general jurisdiction exists, the forum state may exercise jurisdiction over the defendant on any matter, even if the matter is unrelated to the defendant's contacts with the forum. *Id.* at 613.

When a plaintiff asserts specific jurisdiction over a non-resident defendant, the court must determine (1) whether "the defendant purposefully directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and (2) whether "the controversy arises out of or is related to the defendant's conduct with the forum state." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The fact that a Texas plaintiff suffered some harm in Texas is insufficient to establish specific

jurisdiction.  *Revell v. Lidov*, 317 F.3d 467, 473 n. 41 (5th Cir. 2002).  Rather, the focus of the specific jurisdiction inquiry is on "the relationship between the defendant, the forum, and the litigation."  *Freudenspreung*, 379 F.3d at 343.  Contacts that are "random, fortuitous, or attenuated" do not satisfy the minimum contacts requirement.  *Moncrief*, 481 F.3d at 312.

## ANALYSIS

### I.      Specific Jurisdiction

AREC argues that it has not purposely directed any activities toward Texas nor has it purposefully availed itself of the benefits and protections of the laws of Texas in connection with any of the claims Plaintiff asserts in the instant lawsuit.  Docket No. 3 at 8.  In response, Jones asserts that AREC made a conscious decision to establish purposeful contacts with Jones in Texas. Docket No. 7 at 11–13.

As a framework for the analysis, the Court considers:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  The Court addresses each in turn.

### *Seiferth* Prong One: Minimum Contacts

The minimum contacts prong is not satisfied.  AREC is not a citizen, resident, or domiciliary of Texas, but rather is a New York corporation with its principal place of business in New York, New York.  Docket No. 3-1 at 2.  AREC has never: had an office in Texas; maintained an agent for service of process in Texas; had a mailing address or post office box in Texas; had a telephone or facsimile number in Texas; had any employees in Texas; filed a tax

return in Texas; had a bank account or safe deposit box with a bank or any other financial institution in Texas; had any interest in any trust administered in Texas; owned or leased any real property in Texas; or been a party to a contract made in Texas. Docket No. 3-1.

Plaintiff argues that AREC has committed multiple acts that are sufficient for minimum contacts. For example, Plaintiff contends that AREC has unilaterally imposed a contract on Plaintiff, a Texas resident. Docket No. 7 at 6. AREC has contacted Jones numerous times regarding Ms. Johnson's probate proceedings. *Id*. at 6–11. AREC has sent royalty checks in accordance with the contract to Plaintiff in Texas. *Id*. at 5. Yet these do not establish minimum contacts:

> [T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

*Freudensprung*, 379 F.3d at 344 (5th Cir. 2004). Communications incidental to forming, negotiating, and performing under a contract with a forum resident are also similarly insufficient. *See McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("[C]ommunications relating to the performance of a contract themselves are insufficient to establish minimum contacts.").

In sum, AREC's contacts with Texas "rest on nothing but 'the mere fortuity that [Jones] happens to be a resident of the forum.' " *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985)). Here, the contract was not drafted in Texas, it was not entered into in Texas and it was not signed in Texas. *See* Docket No. 3-1. Plaintiff admits she did not sign the contract and is not a party to the contract. Docket No. 2 at 3. Thus, the only connection between this lawsuit and the forum is that Jones was a Texas resident at the time of Ms. Johnson's death. This is not enough to trigger

personal jurisdiction over AREC. *See McFadin*, 587 F.3d at 761 ("The little contact with Texas came only from the fortuity of the plaintiffs' residence there. We therefore find that there are insufficient contacts to establish personal jurisdiction over [defendant] with respect to the contract claim.").

The Court notes, however, that Jones's complaint rests in both contract and tort law and that the involvement of an intentional tort may impact the applicable body of law. The Fifth Circuit has held that "when the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001) (*citing Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)). In *Lewis*, the actual communications with the forum consisted of phone calls during which the defendants allegedly lied about material facts surrounding a loan, thereby giving rise to plaintiff's complaints of fraud and misrepresentation. *Id.* *Wien* also involved misrepresentations made by non-residents during communications with the forum. *Wien*, 195 F.3d at 210-212. Unlike the intentional torts at issue in *Lewis* and *Wien*, the conversion alleged by Jones did not arise from the content of the actual communications between Defendant and the forum, but rather the unilateral activity of Defendant at its place of business in New York.

Texas's long-arm statue subjects a non-resident to jurisdiction in the forum if it commits a tort in whole or in part in Texas. TEX. CIV. PRAC. & REM. CODE § 17.042. The tort of conversion is defined as " 'the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights.' " *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 229 (5th Cir. 2012) (citing *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 622 (Tex.1992)). Defendant committed the conversion, if at all, in the

jurisdiction where the funds were held—i.e., New York. Accordingly, Defendant's alleged tortious conduct does not fall within Texas's long-arm statute.

In her responsive briefing, Jones made no attempt to distinguish the cases presented by AREC. Rather, in her Sur-Reply, Jones mainly relies on *Burger King Corp. v. Rudzewic*, 471 U.S. 462, 474 (1985), to support her argument. *See* Sur-Reply, Docket No. 9 at 1–5 (explaining why *Burger King* warrants imposing personal jurisdiction over AREC). But *Burger King* is readily distinguishable. In *Burger King*, the Defendant, John Rudzewicz, was a Michigan resident. 471 U.S. at 466. He and another person purchased a franchise from Burger King in 1979. *Id*. Burger King had its headquarters in Florida. *Id*. After the franchise started failing, Rudzewicz fell behind in his required payments to the Burger King headquarters. *Id*. at 468. Burger King eventually chose to terminate the franchise, but Rudzewicz refused to vacate the premises. *Id*. Thus, Burger King filed a lawsuit in the Southern District of Florida. *Id*. The district court found that it had personal jurisdiction over Rudzewicz. *Id*. at 469. However, the Eleventh Circuit reversed, explaining that "jurisdiction under these circumstances would offend the fundamental fairness which is the touchstone of due process." *Id*. at 470 (quoting *Burger King Corp. v. Macshara*, 724 F.2d 1505, 1513 (11th Cir. 1984)). Ultimately, the Supreme Court reversed, holding that personal jurisdiction was appropriate because "Rudzewicz established a substantial and continuing relationship with Burger King's Miami headquarters, received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida, and has failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair." 471 U.S. at 487.

Here, this case differs in at least one important way from *Burger King*. When Rudzewicz signed his contract with Burger King and agreed to be a franchisee, it was at least foreseeable he

might be haled into a court in Florida, where Burger King was headquartered. *See* 471 U.S. at 479–480. Here, when AREC signed the contract with Ms. Johnson in 1984, it was not at all foreseeable that AREC would ever be haled into a court in Texas, as the contract had nothing to do with Texas and Ms. Johnson was a resident of Louisiana. "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474. Thus, Jones's argument based on *Burger King* is unpersuasive.

Accordingly, there are insufficient minimum contacts to establish specific jurisdiction. Thus, the Court does not have specific jurisdiction over AREC.

### *Seiferth* Prong Two: Connection between Cause of Action and Contacts

The Court next considers prong two of the *Seiferth* test: "(2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." 472 F.3d at 271. Even if this Court were to hold that there exist minimum contacts in this case, prong two of *Seiferth* would still not be satisfied because Jones's cause of action is not connected to those contacts.

"In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017). Thus, specific jurisdiction requires "a connection between the forum and the specific claims at issue." *Id*. (emphasis added).

Here, that connection is lacking. Even assuming that the royalty checks and the communications constitute "minimum contacts," those actions are not at the root of Plaintiff's cause of action. Rather, Plaintiff's claims (declaratory judgment, conversion, and constructive

trust) arise out of AREC's retention of 50 percent of the royalties according to its interpretation of the 1984 contract with Ms. Johnson. *See* Complaint, Docket No. 2. For this Court to have specific jurisdiction over Plaintiff's conversion claim, the money allegedly converted "must be in Texas when the conversion actually occurs." *Pervasive Software*, 688 F.3d at 230. And it is undisputed that the object of this litigation—retained royalties—is in New York, not Texas.

Accordingly, for two separate and independent reasons, the Court declines to exercise specific jurisdiction over AREC as to Jones's claims.

## II.     General Jurisdiction

The Supreme Court has laid down the framework for general jurisdiction: "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Here, the Court lacks general jurisdiction over AREC. AREC is not a citizen, resident, or domiciliary of Texas, but rather is a New York corporation with its principal place of business in New York, New York. Docket No. 3-1 at 2. Moreover, as detailed above, AREC has had very limited contact with Texas. *See supra* at p. 5; *see also* Docket No. 3-1. Given AREC's limited contacts with the forum (*see* Docket No. 7 at pp. 10-12), it would be inappropriate to exercise general jurisdiction over AREC in this matter. *See, e.g.*, *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559, (2017) (reversing the Montana Supreme Court, holding that even though defendant

had over 2,000 employees and more than 2,000 miles of railroad track in Montana, general jurisdiction was not appropriate).

Accordingly, the Court declines to exercise general jurisdiction over AREC.

## CONCLUSION

For the reasons above, AREC's Motion to Dismiss for Lack of Jurisdiction (Docket No. 3) is **GRANTED**. The Court hereby **DISMISSES WITHOUT PREJUDICE** all of Plaintiff's claims against Defendant. Any other motions not previously ruled on are hereby **DENIED**. The Clerk of the Court is directed to close this case.

**So ORDERED and SIGNED this 6th day of September, 2018.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE